**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

DELISA ROSE, )
 )
 Plaintiff, )
 )
 ) Case No. CIV-18-301-KEW
 )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
 )
 Defendant. )

**OPINION AND ORDER**

Plaintiff Delisa Rose (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 50 years old at the time of the decision. She has a limited education. She has worked in the past as a booth cashier II, assistant manager, retail sales clerk, and department manager. She alleges an inability to work beginning November 10, 2015, due to limitations resulting from diabetes, scoliosis, bulging disc in neck, sciatica, degenerative disc disease, blurred vision, acute sinusitis, tingling and numbness in left hand and arm, fibromyalgia, left foot and ankle pain, right knee and shoulder pain, abdominal pain, and depression.

### Procedural History

On March 22, 2016, Claimant filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401,

*et seq.*) of the Social Security Act and protectively filed for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On June 6, 2017, Administrative Law Judge("ALJ") Doug Gabbard, II, conducted an administrative hearing by video, presiding from McAlester, Oklahoma. Claimant appeared from Muskogee, Oklahoma. On September 28, 2017, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on July 6, 2018, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work, with certain limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly consider the effects of all Claimant's impairments at step four of the sequential evaluation; (2) failing to properly evaluate the treating physician's opinion; and (3) failing to perform a proper credibility and consistency evaluation.

**Step Four Determination**

In his decision, the ALJ found Claimant suffered from severe impairments of degenerative disc disease, peripheral neuropathy, and mild chronic obstructive pulmonary disease ("COPD"). (Tr. 51). He determined Claimant could perform light work, with other limitations. Claimant could perform frequent climbing, balancing, kneeling, crouching, and crawling; occasional stooping; and occasional looking down. She must avoid even moderate exposure to dusts, gases, odors, fumes, and other pulmonary irritants. Claimant must be allowed to alternatively sit and stand every 30-45 minutes throughout the workday, in order to change positions, but without leaving the workstation. (Tr. 53).

After consultation with a VE, the ALJ determined Claimant could return to her past relevant work as a booth cashier II, as it was generally performed. (Tr. 55-56). As a result, the ALJ concluded Claimant was not under a disability from November 10, 2015, through the date of the decision. (Tr. 56).

Claimant contends that the ALJ improperly performed the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996). She asserts the ALJ failed to properly access her RFC, failed to assess the physical and mental demands of her past relevant work, and therefore improperly determined she could return to her past relevant work.

Step four of the sequential analysis requires the ALJ evaluate a claimant's RFC, determine the physical and mental demands of a claimant's past relevant work, and then conclude whether a claimant has the ability to meet the job demands of his past relevant work using the determined RFC. *Winfrey*, 92 F.3d at 1023. The ALJ may rely upon the testimony of the VE when making the determination of the demands of a claimant's past relevant work, but "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id*. at 1025; *see also Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003).

Claimant argues that although the ALJ determined her peripheral neuropathy was a severe impairment, the ALJ failed to include appropriate limitations associated with the impairment in the RFC, and a severe impairment of peripheral neuropathy would make it impossible for her to perform past relevant work. However, the ALJ addressed Claimant's peripheral neuropathy in the RFC. He discussed Claimant's treatment with Dale Reinschmiedt, D.O., beginning in July of 2015, wherein she reported difficulty moving her neck, but she did not have numbness, tingling, or weakness of her upper extremities, except for tingling in her left hand. Her gait was normal and strength, sensation, and range of motion of her extremities were intact. Claimant's gait, station, and balance remained normal through November of 2016. (Tr. 53-54, 326-28,

410-11, 474). The ALJ referenced Claimant's chiropractic treatment records showing she began therapy in October of 2015. (Tr. 54, 331-56, 366-78, 381-87, 395-401). In January of 2016, Dr. Reinschmiedt noted Claimant's physical examination was unremarkable, stating that she had normal range of motion with no edema, tenderness, or deformity. Claimant showed no signs of respiratory distress. Dr. Reinschmiedt assessed Claimant with torticollis, cough, and thoracic strain. She was assigned a lifting restriction for 15-35 pounds. (Tr. 54, 318-20).

The ALJ also discussed Claimant's consultative examination with Benjamin Roberts, D.O., in May of 2016. Dr. Roberts noted Claimant's chief complaint was neck and back pain, diabetes, and neuropathy. She reported worsening neck pain with occasional radiation of the pain into her legs. She experienced pins and needles in her hands and feet. Upon examination, Claimant's neck appeared stiff and guarded with pain to palpation, but her range of motion was normal. She had an equal range of motion in her extremities throughout with no cyanosis, claudication, or edema present. Her thumb/finger opposition was normal, but she did complain of pain between her shoulder blades with movement of her arms above the head. Claimant exhibited some abnormal sensation in her right calf, but her grip and great toe strength were equal bilaterally and rated 5/5. She showed no signs of upper/lower motor neuron defect. Claimant's heel/toe walking was equal

7

bilaterally, her range of motion of spine was without defect (pain with movement), and her straight leg raising test was negative in the seated position but positive in the supine position. Claimant's gait was stable with normal speed and stability, but a mild limp was present. She did not require the use of an assistive device to ambulate. Dr. Roberts assessed Claimant with neck pain, back pain with radiculopathy, diabetes, neuropathy, hypercholesterolemia, and tobacco use disorder. (Tr. 54, 359-64).

The ALJ discussed reports by Claimant from July of 2016 that her pain and function had improved and that she was experiencing less discomfort. (Tr. 54, 401). He considered Claimant's testimony that looking down would trigger pain in her neck and back and that she needed to alternative sitting and standing during the day. He noted she complained of poor grip and numbness and tingling in her hands. (Tr. 53).

As discussed with regard to the evaluation of opinion evidence, the ALJ also considered the medical source statement of Dr. Tuley (Tr. 55). He also noted the opinions of the state agency medical consultants who determined Claimant could perform light exertion work with occasional and frequent postural limitations. (Tr. 55, 62-89, 82-101).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287

F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

In the decision, the ALJ determined Claimant's peripheral neuropathy was severe, referenced Claimant's complaints, and discussed the medical evidence. He determined Claimant had the RFC to perform light work and further limited her to frequent climbing, balancing, kneeling, crouching, and crawling and to occasional stooping and looking down. She was to avoid even moderate exposure to dust, gases, odors, and fumes, and other pulmonary irritants. She needed to alternatively sit and stand every 30-45 minutes throughout the workday for the purpose of changing positions, but she would not leave the workstation. (Tr.

9

53). The Court finds no error with the ALJ's RFC determination.

Claimant also asserts the ALJ failed to assess the physical and mental demands of her past relevant work and therefore his determination that she could perform her past relevant work as a booth cashier was unsupported at step four. With respect to the second step of the *Winfrey* analysis, the VE listened to Claimant's testimony regarding her past relevant work and even asked Claimant some questions regarding some of her duties. (Tr. 13-18, 24). She described Claimant's past relevant work, relying on the Dictionary of Occupational Titles ("DOT"), testifying that Claimant had past relevant work as a department manager, assistant manager, retail sales clerk, and cashier II, referring to the applicable DOT numbers, the levels of exertion, and the skill levels of the jobs. (Tr. 24-25). The ALJ presented the VE with a hypothetical question that included the limitations ultimately adopted in the RFC, and the VE testified Claimant could perform her past relevant work as a cashier II (booth cashier) as it is generally performed in the national economy. (Tr. 26-27).

The ALJ noted in the decision that [i]n comparing the [C]laimant's [RFC] with the physical and mental demands of this work, the vocational expert further testified that an individual having the [C]laimant's [RFC] would be able to perform the [C]laimant's past work as a cashier II, as generally performed. Accordingly, the undersigned concluded that the [C]laimant could

perform her past work as a booth cashier II, as generally performed." (Tr. 55-56). The Court finds no error with regard to the ALJ's step four determination. *See Adcock v. Commissioner of Soc. Sec.*, 748 Fed. Appx. 842, 847-48 (10th Cir. 2018); *see also Doyal*, 331 F.3d at 760-61.

**Evaluation of Opinion Evidence**

Claimant contends the ALJ failed to properly evaluate and weigh the opinion of her treating physician Dr. Barbara Tuley, M.D. Dr. Tuley first examined Claimant at the Eufaula Health and Wellness Clinic on November 14, 2016. Claimant's chief complaint was disability, and she claimed degenerative disc disease of the neck and lumbar spine and scoliosis. Dr. Tuley noted there were no outside records from a chiropractor or other facilities, and her complaints were not documented in the record. Upon examination, Dr. Tuley determined Claimant had radicular pain in the lower extremities, no leg muscle atrophy, no tingling of the limbs, and no history of limb weakness. Claimant appeared in no acute distress. Her cervical, thoracic, and lumbar spines showed no abnormalities. Dr. Turley assessed Claimant with low back pain. (Tr. 447-52).

Dr. Tuley also completed a Residual Functional Capacity Questionnaire. She noted Claimant had diagnoses of COPD, type II diabetes, and chronic back pain. She assessed Claimant with symptoms of pain, but she did not indicate Claimant's prognosis.

11

The noted clinical findings were for mild COPD "on screening PFTs." Dr. Tuley indicated Claimant's symptoms associated with her illness were "seldom" severe enough to interfere with her attention and concentration, but she determined Claimant's impairments were expected to last at least twelve months. Claimant had side effects of dizziness and nausea from her medications. Based on her impairments, Dr. Tuley concluded Claimant could sit and stand for sixty minutes at one time and sit in a recliner or lie down for three hours in a day. Claimant could not answer how long she could sit in an eight-hour workday, but Claimant could stand between four to five hours in an eight-hour workday and walk for three to four hours in an eight-hour workday. Claimant did not need to use an assistive device while standing or walking, but she needed a job that permitted her to shift positions at will from sitting, standing, or walking. Claimant also needed to take unscheduled breaks or include periods of walking around during an eight-hour workday four times per day, with each break lasting 20-30 minutes before returning to work. (Tr. 403-05).

Dr. Tuley stated Claimant could never lift and carry ten, twenty, or fifty pounds, but she could frequently lift and carry less than ten pounds. Claimant did not have significant limitation in doing repetitive reaching, handling, or fingering. During an eight-hour workday, Claimant could stop twenty percent of the time, crouch ten percent of the time, kneel twenty percent of the time,

and climb stairs thirty percent of the time. Dr. Tuley stated that based on Claimant's total impairments, her productivity level compared to a healthy individual was seventy-five percent or less. Her impairments were likely to produce good days and bad days, and Claimant was likely to be absent from work because of her impairments or treatment more than four times per month. Dr. Tuley noted Claimant also suffered from blurred vision and needed glasses. Dr. Tuley stated that her opinions on the RFC form were based upon "patient report." (Tr. 403-05).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal*, 331 F.3d at 764. He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]' . . . What matters is that the decision is 'sufficiently specific to make clear to any subsequent reviewer[] that weight the adjudicator gave to the . . . opinion and the

reasons for that weight.'" *Mounts v. Astrue*, 479 Fed. Appx. 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ specifically discussed the medical source statement completed by Dr. Tuley, noting Dr. Tuley was Claimant's treating doctor. The ALJ recounted Dr. Tuley's diagnoses of mild COPD, type II diabetes, and chronic back pain, and limitations on lifting and carrying, standing and walking, taking unscheduled breaks, shifting positions, needing to sit in a recliner or lie down, and being absent from work more than four times per month. The ALJ assigned Dr. Tuley's opinions little weight, noting Dr. Tuley had only treated Claimant once prior to forming her opinions and her opinion that Claimant could never lift and carry ten to fifty pounds was "not consistent with the other treatment evidence, particularly the medical signs or findings. For example, the ALJ noted Claimant's examinations "consistently showed mild respiratory findings and normal gait, station, sensation[, and] strength, nothing that would suggest total disability." The ALJ also noted that by Dr. Tuley's own account, her opinions were based upon Claimant's report of symptoms. (Tr. 55). The Court finds no error by the ALJ, as he provided good reasons and explanation for the weight assigned to Dr. Tuley's opinions in the decision.

**Credibility and Consistency Determination**

Claimant further contends the ALJ's evaluation of his credibility is conclusory and vague, as the ALJ did not properly link his findings to the evidence in the record.

Deference must be given to an ALJ's evaluation of Claimant's credibility, unless there is an indication the ALJ misread the medical evidence as a whole. *See Casias*, 933 F.2d at 801. Any findings by the ALJ "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). The ALJ's decision "must contain specific reasons for the weight given to the [claimant's] symptoms, be consistent with and supported by the evidence, and be clearly articulated so the [claimant] and any subsequent reviewer can assess how the [ALJ] evaluated the [claimant's] symptoms." Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *10. However, an ALJ is not required to conduct a "formalistic factor-by-factor recitation of the evidence[,]" but he must set forth the specific evidence upon which he relied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

As part of his evaluation of Claimant's credibility, the ALJ noted the two-step process for the evaluation of symptoms. (Tr. 53). He determined Claimant's medically determinable impairments could reasonably cause her alleged symptoms, but he found that

15

Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. (Tr. 54). In making these determinations, the ALJ summarized the medical evidence, Claimant's testimony, and reports of symptoms in detail. (Tr. 53-55). He noted the medical evidence showed "[C]laimant has mild/to moderate degenerative disc disease and mild COPD. Examinations have shown normal range of spine motion (Exhibit 11F, p.9), that the [C]laimant is usually not in any acute distress and that she completed all of her activities of daily living." (Tr. 54). The ALJ also noted that Claimant' complaints of pain, numbness/and tingling in her left hand with looking down was accounted for in the RFC. Although the ALJ believed Claimant's COPD was mild, he included environmental restrictions in the RFC. *Id*. The ALJ concluded that Claimant's RFC was supported by the record, including the diagnostic imagining, mild to moderate objective findings, and Claimant's reports of full activities of daily living. (Tr. 55). The Court finds no error with the ALJ's assessment of Claimant's credibility or consistency, as it is supported by the medical record.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence

of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 7th day of April, 2020.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE